# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**JOIVAN FORESTIER,**

      **Plaintiff,**

**v.**                                                    CASE NO: _____

**CELLCO PARTNERSHIP, d/b/a VERIZON
WIRELESS,**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOIVAN FORESTIER ("Forestier" or "Plaintiff"), by and through his undersigned counsel, hereby files suit against Defendant, CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS, a foreign profit corporation ("Verizon" or "Defendant"). In support thereof, Plaintiff alleges the following:

### Jurisdiction and Venue

1.      This is an action for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended ("Title VII"); the Florida Civil Rights Act of 1992, §760.01, Fla. Stat., et seq. ("FCRA"); the Florida Private Sector Whistleblower's Act, 448.102, Fla. Stat. ("FWA); and the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S. Code § 1331 (federal question).  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367, as those claims are so related to the federal law claims that they form part of the same case or controversy.

2.      Venue is proper in this Court because all of the claims of unlawful employment practices arose in Orlando, Orange County, Florida, and because Defendant operates and does business in Orlando, Orange County, Florida.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.      On or about May 7, 2021, Forestier timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").  A true and correct copy of the Charge of Discrimination is attached hereto and incorporated herein as Exhibit A.

4.      The EEOC issued a Notice of Right to Sue on June 2, 2021.  A true and correct copy of the EEOC's Notice of Right to Sue is attached hereto and incorporated herein as Exhibit B. This action is being filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

5.      Plaintiff has exhausted all administrative remedies prior to the filing of this lawsuit. All other conditions precedent to the commencement and maintenance of this action have been satisfied or waived.

## STATEMENT OF THE PARTIES

6.      Forestier is an individual who is, and at all times material hereto was, a resident of Volusia County, Florida.

7.      Defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon") is a Delaware company that is authorized to and conducts business in Orlando, Orange County, Florida.

8.      At all times material to this action, Verizon employed at least 15 employees and has been engaged in an industry affecting commerce, pursuant to Title VII.  At all times relevant to this action, Verizon has continuously been a private employer within the meaning of 42

2

U.S.C. §2000e(b) and 760.02, Fla. Stat. Verizon is likewise an employer as defined under the FWA, 448.101(3), Fla. Stat. At all times material to this action, Verizon has employed at least 50 employees within Orlando, Orange County, Florida. Therefore, Verizon is a statutory employer under the FMLA.

### General Factual Allegations

9.      Forestier was first hired by Verizon on September 29, 2009. During the twelve (12) years of his employment, Forestier's performance was always exemplary.  Forestier never received notice of any performance deficiencies, was never issued any disciplinary actions or performance improvement plans, nor was he ever counseled for any performance-related issues.

10.      In both 2018 and 2019, Forestier was recognized as being in the top 1% at Verizon in sales.

11.      Forestier's wife, Shelby Grover ("Gover"), was also employed at Verizon but worked at a different store than Forestier in Orange City, Florida.

12.      Several employees at the Orange City location, including Grover, reported sexual harassment by another employee, Bryan Maxson ("Maxson"). Those complaints were either not investigated or were purportedly "uncorroborated."

13.      As a result of Verizon failing to take remedial action against Maxson, Forestier's wife, Grover, was further sexually harassed by Maxson.

14.      In January 2018, Grover reported again to Human Resources Partner, Enid Irizarry ("Irizarry") and her District Manager Christian Heinz ("Heinz"), that she was being sexually

harassed by Maxson. Again, the complaint was purportedly "investigated" but her claims were "not corroborated."

15.     As Grover continued to be sexually harassed, Forestier also reported the sexual harassment to Jorge Zapata ("Zapata"), Director of Retail & Sales, on or about September 27, 2018.

16.     Forestier described to Zapata the prior reports of sexual harassment by Grover, as well as the other employees at the Orange City location. Forestier also informed Zapata that neither Heinz nor Irizarry had taken appropriate remedial action, as the sexual harassment continued despite Grover's complaints.

17.     Zapata indicated that he would "take care of it." However, the only action taken was to relocate Maxson to another location less than twelve (12) miles away from Orange City. Forestier later discovered that Heinz had been aware of Maxson's sexually inappropriate behavior for quite some time but failed to take any appropriate action.

18.     After the "investigation" of Forestier's complaint was closed, Senior Human Resources Business Partner, Maria Keenan ("Keenan") called Forestier's wife (Grover) and told her that Forestier should never have made a complaint about the sexual harassment to Zapata or Human Resources. Keenan specifically stated that his complaint could impact his employment in the long term.

19.     Soon thereafter, Forestier was recognized as being in the top 1% at Verizon in sales in 2018. At this time, Forestier was General Manager in the Orange Blossom Trail store and that store was closing. Zapata suggested that Forestier take over the Kissimmee, Florida store.

20.     Zapata suggested that doing so could put him in line for a promotion. Zapata also told Forestier that, in order to be promoted, he would need to be "politically correct" and do things he may not agree with.

21.     Knowing that taking over the Kissimmee, Florida store location would not actually help his career or provide promotion opportunities, Forestier turned down the offer and, instead, took over the store in Lake Nona, Florida.

22.     Once Forestier took over the Lake Nona store, Zapata began increasing his store sales quotas so he could not achieve the President's Award for 2019 again. In fact, Zapata specifically told Forestier he "would not make the same mistake twice" regarding his sales quotas.

23.     In April and May 2019, Forestier had several discussions with Zapata and Forestier's District Manager, Brittany Dukes ("Dukes"), about his sales quotas increasing exponentially. Dukes told Forestier that Zapata had been adjusting his sales quotas by taking quotas from low-performing stores and "re-distributing" them to the Lake Nona location. Nevertheless, Forestier won the President's Cabinet award in 2019.

24.     In February 2020, Dukes rated Forestier as "leading" in performance for the prior year. However, Zapata specifically instructed Dukes to downgrade the performance rating from "leading" to "performing."

25.     When Forestier asked Zapata why he gave that instruction, Zapata responded that other managers had engaged in civic and community activities and I had not. However, participating in civic and community activities was never a part of Forestier's job duties or performance agreement with Verizon.

26.     In June 2020, Forestier took leave for an approximately one-month period due to his wife's pregnancy. He was not allowed to provide any input into deciding who would be assigned to his store as acting manager while he was out on leave, as all other store managers are allowed to do. Instead, Zapata selected someone that he knew Forestier explicitly did not approve of. This retaliatory action by Zapata impacted Forestier's overall performance and compensation at the Lake Nona store.

27.     Also, in June 2020, there was an opening at the Orange City store location and Forestier expressed interest in transferring there. When Forestier spoke to Heinz about the transfer, he was told it was a good idea based on Heinz's knowledge of Forestier's exemplary performance.

28.     However, Forestier later discovered that Heinz had spoken to the acting District Manager, Daniel McGinnis ("McGinnis"), to express confusion as to why Forestier would want to work with him based on his prior complaint of sexual harassment in the Orange City location.

29.     Heinz told McGinnis that he did not trust Forestier and thought he "had something up his sleeve." Zapata specifically told Forestier that Heinz was concerned about his past complaint of sexual harassment and that, if Forestier was not selected to transfer to Orange City, it was because of that past complaint of sexual harassment.

30.     On or about August 17, 2020, Forestier received a call from Heinz, Irizarry, and the two other managers who interviewed him for the Orange City position. Heinz, who was the only decision maker for the position in Orange City, informed me that he had gone with another candidate who spoke Spanish because of the Hispanic population in the area.

31.     Forestier is also fluent in Spanish. The candidate who was selected had been recently demoted due to poor performance and was clearly an inferior candidate in all respects.

32.     In December 2020, Forestier applied for a business position with Verizon. Although he was a finalist among two other candidates for the position, another manager was hired for the position who was actually the weakest of all the candidates. When the hiring manager was questioned about the selection, he disclosed that Zapata had reached out to him and specifically made a strong recommendation in favor of another candidate instead of Forestier.

33.     While managing the Verizon store in Lake Nona, Florida, Forestier requested and was approved for FMLA leave to begin on or about January 10, 2021, due to the birth of a child.

34.     On January 21, 2021, while still on FMLA leave, Forestier was contacted by Human Resources Partner, Enid Irizarry ("Irizarry") and the new District Manager, Justin Noga ("Noga"). Forestier was informed that his position was being "eliminated" and he was being laid off based on "performance."

35.     Forestier explained to Irizarry and Noga that he never had any performance issues and was consistently among the highest producers in the Southwest Region. At that point, Irizarry and Noga changed their reason and stated that perhaps the decision was based on how Forestier "modeled the Verizon credo."

36.     None of Forestier's performance evaluations indicated a problem with how he "modeled the Verizon credo." In fact, Forestier received an award for modeling the Verizon credo for the year 2021 from the SVP of Consumer Sales and Operations, Krista Bourne, so that reason provided for Forestier's termination was fabricated.

7

37.     Furthermore, Forestier's position was not actually eliminated because someone replaced him as Manager of the Lake Nona store after he left.

38.     Further, Forestier complained of the continuing retaliatory conduct to Verizon Human Resources on numerous occasions between early 2020 and April 2021. These complaints resulted in further retaliatory actions against Forestier, including, but not limited to, terminating his employment, denying him promotions and denying him other positions with Verizon following his illegal discharge.

39.     Following Forestier's termination, he applied for several positions within Verizon at different locations, including Manager of the Kirkman Road location in Orlando, Florida; General Manager in the Sanford/Altamont Springs store; and Business Account Manager for the Jacksonville, Florida territory. However, Forestier was denied each of these positions.

**COUNT I**
**RETALIATION IN VIOLATION OF TITLE VII**

40.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

41.     On or about September 27, 2018, Plaintiff complained about sexual harassment in the workplace on behalf of his wife and other employees of Verizon, which constituted protected activity. He also reported that Heinz and Irizarry had failed to take any action to remedy the harassment when the harassed employees had complained previously.

42.     Forestier further complained to Verizon Human Resources on several occasions between early 2020 and April 2021.

43.     Plaintiff was subjected to adverse employment actions, including increasing his store sales quotas so he could not achieve them, downgrading his performance rating from

"leading" to "performing," selecting an acting manager while Forestier was on leave that impacted his overall performance and compensation, not allowing him to transfer to Orange City store location, and denying him several positions for which he applied before and after his termination, and ultimately terminating his employment.

44.     All of these adverse employment actions constitute unlawful retaliation in violation of Title VII. These retaliatory employment actions were taken because Plaintiff engaged in protected conduct, as evidenced in part by the statements of various employees, including decision makers, that Plaintiff's complaints of sexual harassment were the reason certain actions were taken.

45.     Defendant's retaliatory actions were done with malice and reckless indifference to Plaintiff's federally protected rights in violation of Title VII.

46.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress, and related damages.

**COUNT II**
**RETALIATION IN VIOLATION OF THE FCRA**

47.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

48.     On or about September 27, 2018, Plaintiff complained about sexual harassment in the workplace on behalf of his wife and other employees of Verizon, which constituted protected activity. He also reported that Heinz and Irizarry had failed to take any action to remedy the harassment when the harassed employees had complained previously.

49.     Forestier further complained about he continued retaliatory conduct to Verizon

Human Resources on several occasions between early 2020 and April 2021.

50.     Plaintiff was subjected to adverse employment actions, including increasing his store sales quotas so he could not achieve them, downgrading his performance rating from "leading" to "performing," selecting an acting manager while Forestier was on leave that impacted his overall performance and compensation, not allowing him to transfer to Orange City store location, and denying him several positions for which he applied before and after his termination, and ultimately terminating his employment.

51.     All of these adverse employment actions constitute unlawful retaliation in violation of the FCRA. These retaliatory employment actions were taken because Plaintiff engaged in protected conduct, as evidenced in part by the statements of various employees, including decision makers, that Plaintiff's complaints of sexual harassment were the reason certain actions were taken.

52.     Defendant's retaliatory actions were done with malice and reckless indifference to Plaintiff's federally protected rights in violation of the FCRA.

53.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress, and related damages.

**COUNT III**
**RETALIATION IN VIOLATION OF THE FWA**

54.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

55.     Plaintiff engaged in protected activity when he objected to sexual harassment in the workplace and to Verizon's failure to take appropriate remedial action when the sexual harassment was first reported, which is a violation of Title VII and the FCRA.

56.     Plaintiff further engaged in protected activity when he complained about the ongoing retaliatory actions on several occasions to Verizon Human Resources between early 2020 and April 2021.

57.     Plaintiff was subjected to adverse employment actions, including increasing his store sales quotas so he could not achieve them, downgrading his performance rating from "leading" to "performing," selecting an acting manager while Forestier was on leave that impacted his overall performance and compensation, not allowing him to transfer to Orange City store location, and denying him several positions for which he applied before and after his termination, and ultimately terminating his employment.

58.     All of these adverse employment actions constitute unlawful retaliation in violation of the FWA. These retaliatory employment actions were taken because Plaintiff engaged in protected conduct, as evidenced in part by the statements of various employees, including decision makers, that Plaintiff's complaints of sexual harassment were the reason certain actions were taken.

59.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress, and related damages.

## COUNT IV
### Retaliation in Violation of the Family and Medical Leave Act

60.     Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

61.     The FMLA prohibits employers from retaliating against employees for engaging in protected activities.

62.     Forestier engaged in statutorily protected conduct when he took approved FMLA leave for the birth of a child on or about January 10, 2021.

63.     Forestier suffered an adverse employment action when he was terminated on or about January 21, 2021.

64.     There is a causal connection between Forestier taking approved FMLA leave and his termination. The decision-makers regarding his termination were aware that Forestier was on approved FMLA leave. Furthermore, his termination was not wholly unrelated to his FMLA leave.

65.     The short period, less than two weeks, between Forestier's FMLA leave and his termination are evidence of causation and pretext.

66.      Defendant's articulated reason for terminating Forestier changed from his position being eliminated to performance issues, to failure to "model the Verizon credo."

67.     These reasons are all false and retaliation is the real reason for Forestier's termination.

68.     First, his position was not actually eliminated, and someone was placed in that position after Forestier's termination.

69.     Second, there is no evidence of any performance issues. In fact, Forestier never had any performance issues and was consistently among the highest producers in the Southwest Region.

70.     Third, no one ever complained that Forestier was not modeling the Verizon credo and none of his performance evaluations indicated that was a problem. Further, Forestier received an award for "modeling the Verizon credo" from SVP of Consumer Sales and operations, Krista Borne for the year 2021. Thus, that reason for his termination provided by Verizon was fabricated.

71.     As a direct and proximate cause of Defendant's retaliatory conduct, Forestier has suffered damages, including back pay, front pay, and liquidated damages.

72.     As a result of Defendant's actions, Forestier has engaged the services of the undersigned counsel and is obligated to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff, Forestier, respectfully prays for entry of a judgment against Defendant for the following:

a.     Compensatory damages for lost wages, benefits, and any other applicable remuneration;
b.     Other compensatory damages as permitted by law, including damages for emotional distress and suffering;
c.     Front pay in lieu of reinstatement;
d.     Prejudgment interest;
e.     Attorney's fees and costs; and
f.     Such other and further relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiff Forestier respectfully demands a trial by jury on all issues so triable.

DATED this 18 day of June 2021.

Respectfully submitted,

**BURRUEZO & BURRUEZO, PLLC**

/s/ Deborah E. Frimmel, Esq.
DEBORAH E. FRIMMEL, ESQ.
Florida Bar Number 93970
deborah@burruezolaw.com
911 Outer Road
Orlando, Florida 32814
Office: 407.754.2904
Facsimile: 407.754.2905

Attorneys for Plaintiff, Joivan Forestier

4851-2227-1976, v. 2

# EXHIBIT A

EEOC MIAMI DISTRICT OFFICE
RECEIVED 05/07/2021

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974.  See Privacy Act<br>Statement before completing this form. | Agency(ies) | Charge Number(s): |
|---|---|---|
| | _X_ FEPA<br>_X_ EEOC | **510-2021-04132** |

| Florida Commission on Human Relations and EEOC |
|---|
| *State or local Agency, if any* |

| Name *(indicate Mr. Ms. Mrs.)*<br>Mr. Joivan Forestier | Home Phone *(Incl. Area Code)*<br>(407) 388-5269 | Date of Birth<br>09/26/1984 |
|---|---|---|
| Street Address<br>47 Hollow Pine Drive | City, State and ZIP Code<br>Debary, Florida 32713 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name<br>Cellco Partnership d/b/a Verizon Wireless | No. Employees, Members<br>130,000 + | Phone No. *(Include Area Code)*<br>(800) 922-0204 |
|---|---|---|
| Street Address<br>One Verizon Way | City, State and ZIP Code<br>Basking Ridge, New Jersey 07920 | |
| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON *(Check appropriate box(es))*<br><br>__ RACE   __ COLOR __ SEX __ RELIGION __ NATIONAL ORIGIN<br><br> _x_ RETALIATION   __ AGE   __ DISABILITY   __ OTHER (Specify below.) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest               Latest<br>April 2019          January 21, 2021<br><br>__ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE *(If additional paper is needed, attached extra sheet(s)):*

I was first hired by Verizon on September 29, 2009. During the twelve (12) years of my employment, my performance was always exemplary, and I was never informed of any performance deficiencies, issued any disciplinary actions or performance improvement plans, nor counseled for any performance-related issues.

My wife, Shelby Grover, was also employed by Verizon and worked at the Verizon store in Orange City, Florida. Several employees at the Orange City location, including my wife, reported sexual harassment against an employee, Bryan Maxson. Those complaints were either not investigated at all or were purportedly "not corroborated." As a result of Verizon failing to take remedial action against Mr. Maxson, my wife also fell victim to continued sexual harassment.

In January 2018, my wife reported to Human Resources Partner, Enid Irizarry ("Ms. Irizarry") and her District Manager Christian Heinz ("Mr. Heinz"), that she was being sexually harassed by Mr. Maxson. Again, the complaint was purportedly "investigated" but her claims were "not corroborated." As a result of the continued sexual harassment of my wife while employed by Verizon, I also reported the sexual harassment to Jorge Zapata ("Zapata"), Director of Retail & Sales, on September 27, 2018.

I explained to Mr. Zapata the prior reports of sexual harassment by my wife, as well as the other employees at the Orange City location. I also informed Mr. Zapata that the sexual harassment continued unabated despite my wife's complaints to Mr. Heinz and Ms. Irizarry. Mr. Zapata indicated to me that he would "take care of it." However, there was never any remedial action taken. Instead, Mr. Maxson was simply relocated to another location less than twelve (12) miles away from Orange City.

More importantly, it came to our attention that Mr. Heinz had been aware of Mr. Maxson's sexually inappropriate behavior for quite some time but failed to take any appropriate action. After the "investigation" of

EEOC MIAMI DISTRICT OFFICE
RECEIVED 05/07/2021

my complaint was closed, Senior Human Resources Business Partner, Maria Katsourides Keenan ("Keenan") called my wife and told her that I should never have made a complaint about the sexual harassment to Mr. Zapata and Human Resources. Ms. Keenan specifically told my wife that my complaint could impact my employment in the long term.

Approximately three (3) months later, I was recognized as being in the top 1% at Verizon in sales in 2018. At this time, I was General Manager in the Orange Blossom Trail store and that store was closing. Mr. Zapata tried to convince me to take over the Kissimmee, Florida store claiming that being assigned to that location would benefit my career and put me in line for a promotion. Mr. Zapata also told me that to be promoted I would need to be "politically correct" and do things I may not agree with. However, I knew that the Kissimmee, Florida store location would, in fact, not be good for my career or provide promotion opportunities. As such, I turned down the offer to take over the Kissimmee store. Instead, I took over the store in Lake Nona, Florida.

Once I took over the Lake Nona store, Mr. Zapata began to retaliate against me by increasing my store sales quotas so I could not achieve the President's Award for 2019, as I had in 2018.

Mr. Zapata specifically stated to me that he "would not make the same mistake twice" regarding my sales quotas. In April and May 2019, I had several discussions with Mr. Zapata and my District Manager, Brittany Dukes, regarding why my sales quotas at Lake Nona were increasing exponentially. Ms. Dukes told me that Mr. Zapata had been adjusting my sales quotas by taking quotas from low-performing stores and "re-distributing" them to my location.

I again won the President's Cabinet award for being in the top 1% of performers for 2019. In February 2020, my District Manager, Ms. Dukes, rated me as "leading" in performance for the prior year. However, Mr. Zapata specifically instructed Ms. Dukes to downgrade my performance rating from "leading" to "performing." To the best of my knowledge and belief, I was the only President's Cabinet winner to be rated "performing" instead of "leading" in performance. When I asked Mr. Zapata why he instructed Ms. Dukes to lower my performance rating, he said it was because other managers had engaged in civic and community activities and I had not. Participating in civic and community activities was never a part of my job duties or performance agreement with Verizon. This was yet another retaliatory action taken because of my prior report of sexual harassment.

In June 2020, because of my wife's pregnancy, I took leave for an approximately one-month period. I was not permitted to have any input into who would be assigned to my store as acting manager while I was out on leave, although all other store managers were. Instead, Mr. Zapata hand-picked someone that I explicitly did not approve of without being allowed to provide any input whatsoever. This was yet another retaliatory action by Mr. Zapata that impacted my overall performance and compensation at the Lake Nona store.

Also, in June 2020, I expressed interest in a transfer to the Orange City store location, because of an upcoming opening, and spoke to Mr. Heinz about the transfer. Mr. Heinz told me that the transfer was a good idea and expressed interest in transferring me based on his knowledge of my exemplary performance. However, I later found out that Mr. Heinz had spoken to acting District Manager, Daniel McGinnis, and expressed confusion as to why I would want to work with him based on my prior complaint of sexual harassment in the Orange City location. Mr. Heinz told Mr. McGinnis that he did not trust me and thought I "had something up my sleeve." Mr. Zapata specifically told me that Mr. Heinz was concerned about my past complaint of sexual harassment and that, if I was not selected to transfer to Orange City, it was because of that past complaint of sexual harassment. I was not allowed to transfer to the Orange City location, which was yet another retaliatory action by both Mr. Zapata and Mr. Heinz.

On or about August 17, 2020, I received a call from Mr. Heinz, Ms. Irizarry, and the two other managers who interviewed me for the Orange City position. Mr. Heinz, who was the only decision maker for the position in Orange City, informed me that he had gone with another candidate who spoke Spanish because of the Hispanic population in the area, although I am also fluent in Spanish. Also, the candidate who was selected had been recently demoted due to poor performance and was clearly an inferior candidate in all respects.

In December 2020, I applied for a business position with Verizon. Although I was a finalist among two other candidates for the position, another manager was hired for the position who was actually the weakest of all the candidates. When the hiring manager was questioned about the selection, he disclosed that Mr. Zapata had reached out to him and specifically made a strong recommendation in favor of another candidate instead of me.

On January 10, 2021, I went out on approved FMLA leave. On January 21, 2021, while still on FMLA leave, I was contacted by Ms. Irizarry (HR) and the new District Manager, Justin Noga. I was informed during this phone call that I was being laid off based on "performance" and that my position was allegedly being "eliminated." When I explained to them that I did not have, and never had, a performance problem and that I was consistently among the highest producers in the Southwest Region, they changed their reasoning and stated that perhaps the decision was based on how I "modeled the Verizon credo." This made little sense to me, based on the fact that all of my performance agreements contained nothing but positive information on how I "modeled the Verizon credo." Furthermore, this was not a "position elimination" because someone replaced me as Manager of the Lake Nona store location. Additionally, there was an opening in Orange City and another individual was placed in the manager position in that location despite my prior application for that position. My termination was clearly retaliatory based on my report of sexual harassment on behalf of my wife.

Following my termination, I applied for several positions within Verizon, including Manager of the Kirkman Road location in Orlando, Florida, General Manager in the Sanford/Altamont Springs store, and Business Account Manager for the Jacksonville, Florida territory. I was denied each of these positions. Thus, despite my best efforts, I have been unable to secure another position with Verizon following my unlawful termination.

As a result of Verizon's unlawful actions, I have been damaged. I have lost pay, benefits, and suffered compensatory damages. Verizon's actions are a violation of Title VII of the Civil Rights Act of 1964, and The Florida Civil Rights Act of 1992, and the Florida Whistleblower Act, Fla. Stat. §448.102.

| I want this charge filed with the EEOC, Florida Commission on Human Relations, and the local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 05/06/2021 _____ *Date*     _____ *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC FORM 5 (REV. 3/01)
4823-0514-0710, v. 1

EXHIBIT
B

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Joivan Forestier**<br>**47 Hollow Pine Drive**<br>**Debary, FL 32713** | From: **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2021-04132** | **Nilia Marti,**<br>**Investigator** | **(786) 648-5858** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐    More than 180 days have passed since the filing of this charge.

☒    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Marissa Cosculluela*    Digitally signed by Marissa Cosculluela
Date: 2021.06.02 13:30:47 -04'00'

For:    **Paul V. Valenti,**
**District Director**

06/02/2021

*(Date Issued)*

Enclosures(s)

cc:    **Respondent Representative**
Attn: Stephania A. Jason, EEO Manager
**VERIZON WIRELESS**
**One Verizon Way, Mail Code: VC34W**
**Basking Ridge, NJ 07920**

**Charging Party Representative**
Attn: Deborah E. Frimmel, Esq.
**BURRUEZO & BURRUEZO, PLLC**
**911 Outer Road**
**Orlando, 32814**

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you** *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was**
*issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*